Earl SMITH and Louise
Smith, Plaintiffs,

v.

TRAVELERS INDEMNITY COMPANY,
Midwestern Indemnity Company, etc.,
et al., Defendants.

No. 84–382–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 19, 1989.

**555**

Paul Bernardini, Daytona Beach, Fla., for plaintiffs.

J. Richard Boehm, C. Chobee Ebbets, Daytona Beach, Fla., and Warren A. Zimmerman, Asst. U.S. Atty., Orlando, Fla., for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

This action is before the court on cross motions for summary judgment. The Smiths originally sued the United States in state court for a declaratory judgment regarding the disposition of Medicare payments the United States made in Earl Smith's behalf. The United States removed the action to federal court, where it filed a cross-claim and counterclaim seeking reimbursement of the Medicare payments paid to various hospitals and doctors on behalf of Earl Smith. On the Smith's motion, the court dismissed the United States as defendant. The United States and the Smiths both filed motions for summary judgment on the counterclaim. Except for the cross-claim and counterclaim, all other claims have been remanded to state court.

## I. STATEMENT OF FACTS

On March 1, 1983, Earl Smith suffered severe injuries while he was a passenger in an automobile that was negligently struck by another automobile. Earl Smith sued the tortfeasor in state court, and Louise Smith, his wife, filed a derivative suit. Following the accident but before determination of the parties legal liability, the United States, through Medicare, paid 40,265.00 dollars of Earl Smith's medical bills. The United States paid bills both before and after June 3, 1983.

Other than Medicare, four insurers became liable to the Smiths as a result of the accident. The Kaiser Foundation Health Plan of Ohio (Kaiser), a medical insurer of Earl Smith, paid approximately 7,500.00 dollars of Earl Smith's medical bills. Kaiser and Medicare did not pay for the same medical services. The tortfeasor also carried 25,000.00 dollars in automobile liability insurance from Commercial Union. On April 16, 1985, Commercial Union paid the Smiths 25,000.00 dollars in satisfaction of their claim. Finally, the Smiths were the beneficiaries of two underinsured motorist insurance policies issued by Midwestern Indemnity Company (Midwestern) and The Travelers Indemnity Company (Travelers). These underinsured motorist insurance policies provided benefits to the Smiths because the third party tortfeasor has been held legally liable to the Smiths, but the third party tortfeasor carried insufficient liability insurance to compensate the Smiths for their injuries. These policies provided 350,000.00 dollars in underinsured motorist insurance benefits and 5,000.00 dollars in medical payment insurance benefits.[1] Because the tortfeasor's automobile liability insurance provided inadequate compensation, the Smiths asserted claims

1. In the pleadings, the Smiths referred only once to the $5,000.00 medical payment insurance policy. They stated that it was for medical payment coverage, was not a no-fault policy, and was subject to a determination of its proceeds. Because the Smiths mention it as part of their underinsured motorist insurance, the court assumes that it provides coverage for medical expenses incurred only as a result of an automobile accident. Because the Smiths distinguish it from the general underinsured motorist insured policies, the court assumes that Midwestern's and Travelers's obligation to pay on the medical payment insurance policy does not depend on a judgment of legal liability. Finally, because the Smiths fail to state whether the medical payment insurance policy was issued by Midwestern or Travelers, the court will refer to it as a product of both insurers.

against Midwestern and Travelers. An arbitration panel awarded the Smiths 377,-000.00 dollars on their claims against Midwestern and Travelers, including approximately 67,000.00 dollars in medical expenses incurred by Earl Smith.

Notwithstanding the adverse arbitration award, Midwestern and Travelers refused to pay the entire awarded amount of underinsured motorist and medical payment coverage to the Smiths; both claimed that the Medicare payments constituted a collateral source of recovery. Under Florida's collateral source rule, collateral sources of recovery in personal injury suits reduce the amount of damages for which the liability insurer is liable. Fla.Stat. § 627.7372 (1987). Because the Medicare payments compensated the Smiths by paying Earl Smith's medical bills, Midwestern and Travelers claimed that Florida's collateral source rule permitted them to withhold from the Smiths the amount of Medicare benefits that the United States already paid.

The United States now seeks reimbursement of the Medicare payments it made to Earl Smith's health-care providers. In its counterclaim against the Smiths, the United States sought to recover the portion of the arbitration award proceeds the Smiths received from Midwestern and Travelers. In its cross-claim against Midwestern, Travelers, and Kaiser, the United States sought to compel Midwestern and Travelers to pay the Smiths the withheld amounts to comply fully with the arbitration award. The United States also sought a declaration that its rights of subrogation to any amount recovered by the Smiths was superior to Kaiser's subrogation right. The United States asserted no claim against Kaiser other than declaratory relief.

In their motion for summary judgment, the Smiths adopted the position taken by Midwestern and Travelers: They claimed that Florida's collateral source rule characterizes Medicare payments as a collateral source of payment. Accordingly, the Smiths argued that Florida's collateral source rule, while preventing Midwestern and Travelers from paying them under the underinsured motorist insurance policies, also protected them from the United States claim for reimbursement.

In its motion for summary judgment on the counterclaim, the United States challenged Midwestern's and Travelers's reliance on Florida's collateral source rule. According to the United States, the federal Medicare statute pre-empts Florida's collateral source rule and dictates that private automobile or liability insurance is the primary source of recovery when both Medicare and private automobile or liability insurance coverage exists. Therefore, the Medicare payments were a secondary source of compensation for the Smiths, recoverable by the United States.

## II. CONCLUSIONS OF LAW

### A. Pre-emption

■ Federal law pre-empts state law when "it is impossible to comply with both state and federal law ... or [when] the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). The relationship between federal and state laws must be considered in light of their interpretation and application, in addition to how they were drafted. *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977).

The federal Medicare statute applicable in 1983 provides:

> Payment under this subchapter may not be made with respect to any item or service to the extent that payment has been made, or can reasonably be expected to be made (as determined in accordance with regulations), with respect to such item or service, under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance. Any payment under this subchapter with respect to any item or service shall be conditioned on reimbursement to the appropriate Trust Fund

established by this subchapter when notice or other information is received that payment for such item or service has been made under such a law, policy, plan, or insurance.

42 U.S.C.A. § 1395y(b)(1) (West 1983), *amended by* 42 U.S.C.A. § 1395y(b)(1) (West Supp.1989).[2] In the legislative history accompanying section 1395y(b)(1), the House of Representatives articulated the reasons for restricting Medicare payments:

> Under present law, medicare is the primary payor ... for hospital and medical services received by beneficiaries. This is true even in cases in which a beneficiary's need for services is related to an injury or illness sustained in an auto accident and the services could have been paid for by a private insurance carrier under the terms of an automobile insurance policy. As a result, medicare has served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract.

H.R.Rep. No. 1167, 96th Cong., 2d Sess., 389, *reprinted in,* 1980 U.S.Code Cong. & Admin.News 5526, 5752. Accordingly,

> medicare will have residual rather than primary liability for the payment of services required by a beneficiary as a result of an injury or illness sustained in an auto accident where payment for the provision of such services can also be made under an automobile insurance policy. Under this provision, it is expected that medicare will ordinarily pay for the beneficiary's care in the usual manner and then seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under

the private policy for the services has been determined.

*Id.*

The House Report concluded that Congress enacted section 1395y(b)(1) to make private automobile insurers liable for medical claims covered under their policies after liability has been established. Although the legislative history suggests that Congress enacted section 1395y(b)(1) primarily to prevent double recovery by the beneficiary of both Medicare and private automobile liability insurance policies, courts interpreting section 1395y(b)(1) have rejected that conclusion. Instead, courts have reasoned that Congress enacted section 1395y(b)(1) to reduce federal expenditures by making private automobile insurers primarily liable for the cost of servicing their policies. *See Colonial Penn Ins. Co. v. Heckler,* 721 F.2d 431, 440 n. 4 (3d Cir. 1983); *Abrams v. Heckler,* 582 F.Supp. 1155, 1164 (S.D.N.Y.1984).

In contrast, Florida's collateral source rule states:

> In any action for personal injury or wrongful death arising out of the ownership, operation, use or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.

Fla.Stat. § 627.7372(1) (1987). A collateral source includes payments made under "[t]he United States Social Security Act; any federal, state, or local income disability act; or any other public programs provid-

**2.** Congress subsequently amended § 1395y(b)(1) to permit the United States to recover directly from private automobile or liability insurers that were responsible for paying the insured's medical bills under an insurance plan. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2344, 98 Stat. 1095 (codified as amended at 42 U.S.C.A. § 1395y(b)(1) (West Supp.1989)). Amended § 1395y(b)(1) also grants the United States subrogation rights to the individual's right to payment from a private automobile or

liability insurer under an insurance plan. *Id.* Although these amendments specifically grant the United States a claim against Midwestern and Travellers to recover the Medicare benefits, the amendments became effective only with respect to items and services furnished on or after July 18, 1984, the date of enactment. 42 U.S.C.A. § 1395y(b)(1). Therefore, these amendments do not apply to the Medicare payments made in 1983, immediately following the accident.

ing medical expenses, disability payments, or other similar benefits." *Id.* at (2)(a).[3]

As the Smiths concede, section 1395y(b)(1) of the federal Medicare statute pre-empts Florida's collateral source rule. The text and legislative history of section 1395y(b)(1) requires private automobile liability insurers to be the primary source, and Medicare the secondary source, when the beneficiary is eligible to receive benefits from both. Florida's collateral source rule does not specifically require private automobile liability insurers to wait until their beneficiaries receive Medicare benefits before paying on the insurance policies. Nevertheless, Florida's collateral source rule obviates the obligation of private automobile liability insurers to pay beneficiaries when they have a collateral source of recovery, including Medicare. Because the collateral source rule permits private automobile liability insurers to become secondary sources of recovery behind Medicare, Florida's collateral source rule obstructs the Congressional purpose behind section 1395y(b)(1). *See also Giles v. United States*, No. 86–0219–L(J) (W.D.Ky. Sept. 8, 1986) (Congress intended that the United States would no longer make Medicare payments for services covered by automobile insurance policies regardless of state law or the terms of an individual insurance policy); *St. Agnes Hosp. v. Jaeckel*, 616 F.Supp. 426, 428 (E.D.Wis.1985) (where insured party sought, under state law, to defeat subrogation rights of Medicare to her recovery from the tortfeasor's private liability insurance, court held that federal Medicare statute pre-empted state law); *Abrams v. Heckler*, 582 F.Supp. at 1165 (where state law required private no-fault insurers to withhold payment when Medicare was present, court held that Congress intended to override the state law when it passed section 1395y(b)(1)). Consequently,

the federal Medicare statute pre-empts Florida's collateral source rule. The United States claim for the reimbursement of the Medicare payments must, therefore, be analyzed under federal law.

### B. *Analysis Under Federal Law*

After the automobile accident occurred but before liability was established, the United States, through Medicare, paid Earl Smith's medical bills. The United States could have refused to pay for those services to the extent that an automobile or liability insurer paid or could reasonably be expected to pay for those medical services. 42 U.S.C.A. § 1395y(b)(1). *See Giles v. United States*, No. 86–0219–L(J) (W.D.Ky. Sept. 8, 1986). In this case, Commercial Union, the tortfeasor's automobile liability insurer, paid the Smiths the full amount of the insurance policy. Midwestern and Travelers, as underinsured motorist insurers, could have been reasonably expected to pay the Smiths as well. *See Abrams v. Heckler*, 582 F.Supp. at 1163–64 (payment reasonably was expected from private automobile liability insurer despite state law that required all automobile insurance policies to withhold payment when Medicare insurance was available).

■ Nevertheless, the United States paid Earl Smith's medical bills and now seeks reimbursement from the Smiths. According to section 1395y(b)(1), Medicare payments are conditioned on reimbursement when and if the United States receives information that an automobile or liability insurer has paid for the services. 42 U.S.C.A. § 1395y(b)(1). Read literally, the conditional reimbursement provision of section 1395y(b)(1) prevents the United States from being reimbursed by healthcare providers or Medicare beneficiaries, unless an automobile or liability insurer

---

**3.** Florida's collateral source rule was amended to exclude as collateral sources Medicaid benefits and medical services programs administered by the Department of Health and Rehabilitative Services. Act effective October 1, 1986, ch. 86–220, § 70, 1 Fla.Laws 1603, 1660 (codified as amended at Fla.Stat. § 627.7372(3) (1987)). Because the liability claims against the insurers were filed, the actions commenced, and settle-

ments negotiated prior to July 1, 1986, the provision excepting these benefits, including Medicare, from Florida's collateral source rule is inapplicable. Act effective October 1, 1986, ch. 86–220, § 70, 1 Fla.Laws 1603, 1660 (codified as amended at Fla.Stat. § 627.7372(3) (1987)). Accordingly, the Medicare payments in this case are the subject of Florida's collateral source rule.

pays the beneficiary or his health-care provider for the medical services rendered.[4]

Commercial Union paid the Smiths 25,-000.00 dollars under the automobile liability insurance policy. Commercial Union, therefore, compensated the Smiths for the same services for which the United States already paid. Because Commercial Union paid the Smiths, the United States can take advantage of the conditional Medicare payment provision of section 1395y(b)(1) to the extent of Commercial Union's 25,000.00 dollars automobile liability insurance policy.

■ Midwestern and Travelers, however, remain liable to the Smiths as underinsured motorist insurers; Midwestern and Travelers refused to pay the Smiths because they claimed Florida's collateral source rule allowed them to withhold the funds. By withholding funds under the arbitration award, Midwestern and Travelers have prevented the United States from receiving information that an automobile or liability insurer has paid Earl Smith's medical expenses and, therefore, have precluded the United States from applying the conditional reimbursement provision of section 1395y(b)(1).

But the federal Medicare statute has pre-empted Florida's collateral source rule. When federal law pre-empts state law, it not only requires courts to use federal law to decide legal issues, but also prevents pre-empted state law from acting "as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. at 248, 104 S.Ct. at 621. Congress enacted section 1395y(b)(1) to provide immediate Medicare benefits under the assumption that the United States could seek reimbursement from private automobile or lia-

bility insurers after liability had been established:

Under present law, ... medicare has served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract. The original concerns that prompted inclusion of this program policy in the law—the administrative difficulties involved in ascertaining private insurance liability and the attendant delays in payment—no longer justify retaining the policy, *particularly if it is understood that immediate payment may be made by medicare with recovery attempts undertaken only subsequently when liability is established.*

H.R.Rep. No. 1167, 96th Cong., 2d Sess., 389, *reprinted in*, 1980 U.S.Code Cong. & Admin.News 5526, 5752 (emphasis added).

The federal Medicare statute, therefore, not only defines the rights and obligations of the parties to the Medicare payments and determines the priority of the payers, but vitiates Midwestern's and Travelers's justification for withholding funds. Midwestern and Travelers simply have refused to pay the Smiths the full amount of the arbitration award. Notwithstanding the literal language of section 1395y(b)(1), Midwestern and Travelers cannot prevent the United States from recovering Medicare payments merely by refusing to pay the Smiths. Accordingly, the United States can recover the outstanding Medicare payments.

The administrative regulations interpreting section 1395y(b)(1) also contemplate reimbursement options available to the United States when automobile or liability insurers fail to pay their beneficiaries.[5] Sec-

---

4. On July 18, 1984, § 1395y(b)(1) was also amended to state that Medicare payments were conditioned on reimbursement when the United States receives information that payment *could be made* under an insurance policy. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2344, 98 Stat. 1095 (codified as amended at 42 U.S.C.A. § 1395y(b)(1) (West Supp.1989)). To the extent that the United States paid Medicare benefits to Smith after July 18, 1984, the 1984 amendments permit the United States to sue Midwestern and Travellers for reimbursement

based solely on the statutory language of § 1395y(b)(1). *See* amendments cited *supra* note 2.

5. Although these regulations were passed on April 5, 1983, they are applicable to services required because of accidents that occurred after December 5, 1980. 42 C.F.R. § 405.322(a). The constitutionality of the retroactive application of the regulations has been upheld in *Colonial Penn Ins. Co. v. Heckler,* 721 F.2d at 442.

tion 405.322(b) of the regulations defines the various types of automobile insurance. 42 C.F.R. § 405.322(b). Automobile medical or no-fault insurance is automobile insurance that pays medical expenses that arise out of the use of an automobile regardless of legal liability. *Id.* Under this definition, Earl Smith's 5,000.00 dollar medical payment insurance policy issued by Midwestern and Travelers constituted automobile medical insurance. The regulations further define liability insurance as "insurance . . . that provides payment based on legal liability for injury to persons or damage to property." *Id.* The 25,000.00 dollar automobile liability insurance policy issued by Commercial Union qualified as liability insurer because it provided payment based on the tortfeasor's legal liability.

Liability insurance also includes uninsured motorist insurance. *Id.* Uninsured motorist insurance includes "insurance under which the policyholder's insurer will pay for damages caused by a motorist who . . . is underinsured." *Id.* The underinsured motorist insurance policies issued by Midwestern and Travelers constituted liability insurance; their obligation to pay arose because the tortfeasor's liability insurance provided payment based on legal liability, but was inadequate to compensate the Smiths for their injuries. Therefore, Midwestern and Travelers are liability insurers on the 350,000.00 dollars in underinsured motorist insurance coverage.

■ Section 405.322 also allows the United States to recover Medicare payments from either the beneficiary or his health-care provider. To recover the Medicare benefits under section 405.322(d), the United States must have paid Medicare benefits to either party and the automobile medical or liability insurer must also have paid either the beneficiary or his health-care provider. 42 C.F.R. § 405.322(d). Furthermore, "payment to a provider of services shall be regarded as payment to the individual on whose behalf the actual payment is made." *Buckner v. Heckler,* 804 F.2d 258, 260 n. 4 (4th Cir.1986) (citing 42 U.S.C.A. § 1395gg(a) (1983)). If, however, the beneficiary or the health-care provider actually received the insurance payment before June 3, 1983, the United States cannot recover the Medicare payment. 42 C.F.R. § 405.322(d)(2).

■ Commercial Union, the tortfeasor's automobile liability insurer, paid the Smiths the full amount of benefits available under the insurance policy irrespective of prior Medicare payments. Because Commercial Union paid the Smiths after June 3, 1983, the United States can recover 25,000.00 dollars from the Smiths.[6] In contrast, Midwestern and Travelers, under both their underinsured motorist and medical payment insurance policies, refused to pay the Smiths the full arbitration award. Because the Smiths have not received a complete insurance payment from Midwestern or Travelers, the United States cannot recover from Smith the Medicare payments it paid Earl Smith's health-care providers.

Sections 405.323–.324 also permit the United States to recover Medicare payments from sources other than the Medicare beneficiary. Section 405.323 allows the United States to be reimbursed for services for which payment can reasonably be expected under automobile medical or no-fault insurance. Section 405.323(c) permits the United States to pay benefits conditioned on reimbursement when the beneficiary has claimed automobile medical insurance benefits, but when a delay prevents prompt payment. 42 C.F.R. § 405.323(c)(1)(i). Furthermore, if the Unit-

---

**6.** The legislative history supports this option for the United States to recover its Medicare payments:

Under this provision, it is expected that medicare will ordinarily pay for the beneficiary's care in the usual manner and then seek reimbursement from the *private insurance carrier* after, and to the extent that, such carrier's liability under the private policy for the services has been determined.

H.R.Rep. No. 1167, 96th Cong., 2d Sess., 389, *reprinted in* 1980 U.S.Code Cong. & Admin. News 5526, 5752 (emphasis added). 91–094511 *See also, Tennessee Ins. Guar. Ass'n v. Holmes,* No. 3–85–1090 (M.D.Tenn. Dec. 4, 1987) (adopting magistrate's report and recommendation stating that under the 1984 amendments to § 1395y(b)(1), the United States recovered Medicare payments from liability insurer's successor in interest).

ed States conditionally pays the Medicare beneficiary, but the automobile medical insurer fails to pay either the beneficiary or his health-care provider, then the United States may sue the automobile medical insurer to recover the Medicare payments. *Id.* at (c)(3)(iii). Section 405.323, however, applies only if the services were furnished on or after June 3, 1983. *Id.* at (a).

The 5,000.00 dollar medical payment insurance policy that Midwestern and Travelers issued constituted automobile medical insurance. To the extent Medicare benefits were furnished before June 3, 1983, the United States cannot be reimbursed from the 5,000.00 dollar medical payment insurance policy. To the extent the United States paid Earl Smith's medical bills after June 3, 1983, the payments were conditioned on reimbursement. Because Midwestern and Travelers failed to pay either the Smiths or Earl Smith's health-care provider, any reimbursement claim the United States possesses for Medicare payments made after June 3, 1983, from the medical payment insurance policy is against Midwestern and Travelers, not the Smiths.

Section 405.324 similarly addresses services for which payment can reasonably be expected under liability insurance:

> If [the Health Care Financing Administration] has information that services for which Medicare benefits have been claimed are for treatment of an injury or illness that was allegedly caused by another party and that the beneficiary has filed, or has the right to file, a liability claim against the other party, a conditional Medicare payment may be made.

42 C.F.R. § 405.324(a)(1). The United States knew that another party caused Earl Smith's injuries and that the Smiths filed claims or had the right to file claims against the tortfeasor, Midwestern, Travelers, and Commercial Union. The United States conditionally paid Earl Smith's medical bills, anticipating that one of the liability insurers would pay the Smiths.

Section 405.324 provides three options for the United States to recover conditional Medicare payments. 42 C.F.R. § 405.324(a)(3)(i), (ii), and (iii). If the Unit-

ed States makes a conditional Medicare payment, subsection (i) requires the beneficiary, who received a payment from a liability insurer, to reimburse the United States for the Medicare payment. *Id.* at (a)(3)(i). Subsection (ii) assumes that the health-care provider received payment from a private insurer, and permits the United States to recover the Medicare payment from the health-care provider. *Id.* at (a)(3)(ii). Subsection (iii) states that the United States may sue either the responsible party or the liability insurer, if the beneficiary fails to receive payment from one of these parties. *Id.* at (a)(3)(iii).

In this case, Commercial Union paid the Smiths 25,000.00 dollars under an automobile liability insurance policy. As with section 405.322(d), section 405.324(a)(3)(i) requires the Smiths to reimburse the United States in accordance with the regulations determining the recoverable amount. *See* 42 C.F.R. § 405.324(b)(3). Because neither the Smiths nor the health-care providers have received payment from Midwestern or Travelers, the United States cannot recover the outstanding value of the Medicare benefits from the Smiths. Any claim the United States has to recover the outstanding Medicare benefits is against the responsible party or the liability insurers, Midwestern and Travelers.

■ Finally, the United States contends that it possesses broad reimbursement rights that permit it to be reimbursed from the Smiths' total recovery. The United States relies on analogous case law interpreting reimbursement provisions under the Federal Employment Compensation Act (FECA). *United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). In *Lorenzetti,* an employee received benefits for medical expenses and lost wages under FECA. When the employee recovered non-economic damages for his pain and suffering from a third party, FECA sought reimbursement for its benefits from the employee's non-economic damage recovery. FECA allowed reimbursement when the beneficiary merely "receives money or other property." *Id.* at 170, 104 S.Ct. at 2287. The Supreme Court

permitted reimbursement, distinguishing between specific classes of expenses payable by FECA and the FECA's general right of reimbursement. *Id.* at 174, 104 S.Ct. at 2289. *See also United States v. Rogers,* 658 F.2d 296 (5th Cir. Unit B Oct. 1981) (permitting reimbursement under the Railroad Unemployment Insurance Act "from any sum or damages paid or payable"); *Haynes v. Rederi A/S Aladdin,* 362 F.2d 345 (5th Cir.1966), *cert. denied,* 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967) (permitting reimbursement under the Longshoremen's and Harbor Workers' Compensation Act for recovery in full of its payments from the *total* recovery of the beneficiary). Accordingly, *Lorenzetti, Rogers,* and *Haynes* involved rights of reimbursement considerably broader than those in the Medicare statute and do not serve as a proper analogy for the Medicare statute.

In contrast, the Medicare statute does not distinguish between specific classes of expenses compensable by Medicare and those expenses for which the United States may recover Medicare payments when an insurer is also liable for the same expenses. As discussed in this court's Order of October 6, 1987, the Medicare reimbursement statute permits the United States to recover Medicare payments regarding any item or service where payment has been made for such item or service. Reimbursement for any item or service is, therefore, tied to payment for such item or service. In the instant case, the items or services Medicare provided were not the items or services for which the Smiths received an insurance award. Consequently, the United States cannot recover its Medicare benefits from the portion of the Smiths' arbitration award already paid by Midwestern and Travelers.

Both the Smiths and the United States have moved for summary judgment on the United States counterclaim. Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the parties submit cross motions for summary judgment, "they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Bricklayers, Masons & Plasterers Local 15 v. Stuart Plastering Co.,* 512 F.2d 1017, 1023 (5th Cir.1975). Therefore, cross motions may be probative of the absence of a factual dispute. *Id.* In the case at hand, the parties dispute whether the Smiths must reimburse the United States, which in turn depends on whether the federal Medicare statute or Florida's collateral source rule controls the disposition of the Medicare payments. Because the federal Medicare statute controls, the parties dispute only the manner in which the statute permits or denies reimbursement by the United States. Absent a factual dispute, this case is properly decided by summary judgment.

For the reasons stated above, the United States motion for summary judgment is GRANTED in part and DENIED in part. The United States may recover 25,000.00 dollars from the Smiths as a consequence of their recovery under the Commercial Union policy. Because Midwestern and Travelers failed to pay the Smiths on the underinsured motorist and medical payment policies for medical services funded by Medicare, the United States cannot now recover the outstanding Medicare payments from the Smiths. Upon successful prosecution of its cross-claim against Midwestern and Travelers, the United States may recover the outstanding Medicare payments from the Smiths. The Smiths' motion for summary judgment is DENIED. The Smiths' motion to withdraw their motion for summary judgment is DENIED as moot.

It is so ORDERED.