UNITED STATES of America, Plaintiff,

v.

Esther E. GEIER, Daniel M. Berkos, General Casualty Insurance Company, and Hartford Insurance Company, Defendants.

No. 92–C–0593–C.

United States District Court, W.D. Wisconsin.

March 9, 1993.

Mark A. Cameli, Asst. U.S. Atty., Madison, WI, for U.S.

Mitchell Hagopian, Madison, WI, for Esther E. Geier.

Daniel Berkos, Mauston, WI, for Daniel M. Berkos.

Wayne Maffei, Sun Prairie, WI, for General Cas. Ins. Co.

Harry Sauthoff, Jr., Madison, WI, for Hartford Ins. Co.

## OPINION and ORDER

CRABB, Chief Judge.

This is a civil action for declaratory and monetary relief brought pursuant to 28

U.S.C. § 1345 and 42 U.S.C. § 1395y(b). Presently before the court is plaintiff's motion for summary judgment. Plaintiff contends that the United States' claim of recovery is paramount to defendant Hartford Insurance Company's subrogated interest in the judgment awarded defendant Geier against a third party tortfeasor for medical expenses incurred as a result of an automobile accident. Defendant Hartford Insurance Company argues that its subrogation rights derive from its insurance contract with defendant Geier and therefore take priority over plaintiff's claim. In addition, defendant Hartford contends that the Reimbursement Agreement signed by plaintiff and defendant Geier bars plaintiff from filing suit against it.

Because all the parties to this action have stipulated that defendants Geier, Berkos and General Casualty Insurance Company should be dismissed from this action with prejudice and without costs, I will dismiss these parties pursuant to Fed.R.Civ.P. 41(a)(1)(ii). Furthermore, I conclude that the statutory language of § 1395y(b) and its legislative history establishes that the United States' right of reimbursement is paramount to all other subrogated parties' claims as a matter of law. Therefore, I will grant plaintiff's motion for summary judgment.

■ To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir. 1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is

proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

For the purpose only of deciding the summary judgment motion pending before this court, I find from the parties' stipulation of facts that there is no genuine dispute with respect to the following material facts.

## STIPULATED FACTS

Defendant Esther Geier, a resident of Mauston, Wisconsin, was at all times material to these proceedings a Medicare beneficiary. Defendant Daniel M. Berkos, a lawyer, represented defendant Geier in *Geier v. Baas*, Case No. 89–CV–115, a personal injury lawsuit filed in Circuit Court for Juneau County. Defendant General Casualty Insurance Company, an insurance carrier operating under the laws of the State of Wisconsin, was named a defendant in the *Geier* case as the insurer for Cheryl L. Baas. Defendant Hartford Insurance was a subrogated party in *Geier* pursuant to the provisions of Wis. Stats. § 803.03.

On or about August 29, 1986, defendant Geier sustained injuries in a motor vehicle accident in Mauston, Wisconsin. At the time of the accident, defendant Geier was eligible for, and received health care benefits from both the Federal Medicare Program, represented by plaintiff in this case, and defendant Hartford Insurance. Medicare paid $11,-150.93 and defendant Hartford disbursed $1,494.71 in payment of claims submitted on behalf of defendant Geier for medical services resulting from the accident.

In 1990, defendant Geier brought suit in Juneau County circuit court against Bass and her insurer, defendant General Casualty Insurance, alleging that Baas's negligence caused the accident and defendant Geier's injuries. On January 9, 1991, plaintiff United States filed with the Juneau County circuit court a reimbursement agreement that it had executed with defendant Geier, which provided that defendant Geier would agree to notify the United States of the amount and terms of any judgment or settlement and pay the United States Department of Justice such amounts as federal law required at the time of judgment or settlement. Neither plaintiff nor defendant Hartford participated

in the trial that took place on December 19, 1991.

On December 19, the trial court found Baas negligent and awarded Geier $1,500 for past medical expenses and $3,000 for past pain and suffering. Baas's insurer, Defendant General Casualty Insurance, deposited $1,500 with the Juneau County Clerk of Court for payment of the medical expenses.

On April 20, 1992, the United States, seeking recovery solely of the $1500, filed a motion with the Juneau County circuit court to withdraw this amount as partial reimbursement for its payment of defendant Geier's medical claims. Defendant Hartford Insurance objected, contending that its subrogation rights had priority over the United States' claim.

## OPINION

Plaintiff seeks to recover the amount awarded for past medical expenses to defendant Geier and deposited by defendant General Casualty Insurance Company. Plaintiff bases its claim on 42 U.S.C. § 1395y(b) and the accompanying regulations. The applicable version of § 1395y(b)(1) (1982 & Supp. V 1987) reads as follows: [1]

> Payment under this subchapter may not be made with respect to any item or service to the extent that payment . . . can reasonably be expected to be made promptly . . . under an automobile or liability insurance policy or plan.... Any payment under this subchapter with respect to any item or service shall be conditioned on reimbursement to the appropriate Trust Fund . . . when notice or other information is received that payment for such item or service has been or could be made under such a law, policy, plan, or insurance. In order to recover payment made under this subchapter . . . the United States may bring an action against any entity which would be responsible for payment with respect to such item or service . . . or against any

> entity . . . which has been paid with respect to such item or service.... The United States shall be subrogated . . . to any right of an individual or any other entity to payment with respect to such item or service under such a law, policy, plan, or insurance.

This statutory language together with the accompanying regulations, legislative history for both the 1984 and 1989 amendments and the related case law establish that the Medicare payments to defendant Geier were conditional and that Congress intended for United States' claims to take priority over all other rights of recovery.

According to the regulations, it is evident that the medical claims paid by Medicare to defendant Geier as a result of the motor vehicle accident were conditional Medicare payments. 42 C.F.R. § 405.324(a). Section 405.324(a) states:

> (1) If HCFA has information that services for which Medicare benefits have been claimed are for treatment of an injury or illness that was allegedly caused by another party and that the beneficiary has filed, or has the right to file, a liability claim against the other party, a conditional Medicare payment may be made....
> (3) . . . (i) If the beneficiary receives payment from an insurance carrier . . . she must reimburse Medicare up to the amount of the Medicare payment.

In this case, defendant Geier's injuries were caused by another party, the tortfeasor Baas. Furthermore, it is undisputed that Medicare paid over $11,000 in claims submitted by defendant Geier specifically for treatment of these injuries. Thus, HCFA possessed information that Medicare benefits were used to pay for services for injuries caused by a third party. Finally, defendant Geier had a right to file a tort claim against Baas and her insurer, defendant General Casualty. Therefore, according to § 405.324, Medicare paid

---

1. In its brief, plaintiff cites to the most recent version of § 1395y(b) as amended in 1989. However, these amendments are applicable only to items and services furnished after December 19, 1989. Defendant Geier's accident occurred on or about August 29, 1986. Because the parties have not stipulated to the dates the medical services were provided, I will assume that defendant Geier received medical attention immediately after the accident and well before December 1989. The application of the older version of § 1395y(b) does not affect the outcome of this motion. The 1989 amendment simply reorganized the structure of the statute and further clarified the United States' right of recovery of conditional Medicare payments.

conditionally for defendant Geier's medical expenses, relying on its subrogated interest and the right of reimbursement should she be successful in her suit.

■ Defendant Hartford argues that the Medicare payments were not conditional because Medicare and Hartford Insurance did not pay for the same medical services provided to defendant Geier. Defendant Hartford emphasizes that it fulfilled its financial obligation to defendant Geier and that Medicare simply paid for the remaining medical costs. Although the latter may be true, it is irrelevant to the determination whether the Medicare payments were conditional. Section 405 does not make any reference to the insurer of the individual receiving Medicare benefits. A conditional payment is based solely upon the relationship among the receiver of Medicare benefits, the tortfeasor and the tortfeasor's insurer. Therefore, since defendant Geier had a right to file a claim against the tortfeasor and her insurer to recover monetary damages, Medicare could pay for a portion of defendant Geier's medical expenses and then seek reimbursement should defendant Geier win her suit.

Because the Medicare payments were conditional, plaintiff has a right to recover the proceeds of any judgment paid by a third party. *St. Agnes Hosp. v. Jaeckel*, 616 F.Supp. 426 (E.D.Wis.1985) (under § 1395y(b) Medicare need not pay anything the insurer can be expected to pay). However, the statute does not address the priority of the United States' claims when another entity also has a right of reimbursement. Indeed, even the regulations are silent on this point. Section 405.324(a)(3) focuses exclusively on the obligations of the beneficiary or health care provider to reimburse the Medicare program upon receipt of payment from an insurance carrier or self-insured party. It speaks only of a potential suit by the United States against the insurer or responsible party if payment is not received from either of them. The regulations do not address the United States' subrogation rights.

■ Although the statutory language is not helpful in determining the extent of the United States' power to recoup its Medicare payments, the legislative history provides insight into the provision's purpose. According to the House Report accompanying the 1980 statutory enactment, the Medicare secondary payor provision was developed to achieve major fiscal savings in the Medicare program. H.R.REP. NO. 1167, 96th Cong., 2d Sess. 389 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. The Report explains:

> Under present law, medicare is the primary payor ... for hospital and medical services received by beneficiaries. This is true even in cases in which a beneficiary's need for services is related to an injury or illness sustained in an auto accident and the services could have been paid for by a private insurance carrier under the terms of an automobile insurance policy. As a result, Medicare has served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract. The original concerns ... no longer justify retaining the policy.

*Id.* at 5752. Furthermore, the 1984 amendments to § 1395y(b) specifically added the right of subrogation and the right of action by the United States to recover proceeds for conditional payments. Through the explicit inclusion of these rights, Congress intended to make it easier for the Medicare program to obtain reimbursement to which it was entitled by law. H.R.REP. NO. 432, 98th Cong., 2d Sess. 1803 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1417.

Allowing defendant Hartford Insurance to assert its claim to the detriment of plaintiff's statutory right would thwart the purpose of § 1395y(b). When Congress restructured the Medicare program to cut costs in 1980, it wanted Medicare to be a secondary source of insurance in those instances in which private insurance carriers would not pay and the insured was eligible to receive federal assistance. Congress did not intend to minimize a private insurer's financial obligation to its insured. In this case, if priority was granted to defendant Hartford's claim, Hartford would recover all of its expenses incurred under its insurance contract with defendant Geier. In effect, Medicare would again become the primary payor.

The 1989 amendment to § 1395y(b) provides persuasive support for the United States' paramount claim of recovery. With this revision, Congress reorganized and consolidated the Medicare secondary payor provisions without changing the statute's wording significantly. However, the amendment's legislative history indicates that Congress intended to make explicit Medicare's right to recover conditional payments from the liability insurer or *any entity paid by the liability insurer.* H.R.REP. NO. 247, 101st Cong., 1st Sess. 1021 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2492. The subsequent regulations codified at 42 C.F.R. § 411.24(g) and § 411.26 clarify the United States' subrogation right and its right to file suit against *any entity* receiving payment from a third party payor. Section 411.26 reads:

(a) Subrogation. With respect to services for which Medicare paid, HCFA is subrogated to any ... private insurer ... entitled to payment by a third party payor.

Although these regulations are not applicable to the case at bar, the same policy concern underlies both the 1984 and 1989 amendments, and that is to identify Medicare as the secondary payor where private insurers are obligated to pay the insured for medical expenses. The 1989 amendment merely states explicitly what Congress implied in the 1984 revisions.

Such reasoning is supported by the sparse, but apparently unanimous, case law on this issue. District courts applying both the 1984 and 1989 amendments to § 1395y(b) have held that the United States' right of reimbursement is paramount to any other claim. *Casualty Reciprocal Exchange v. Johnson,* NO. CIV.A. 91–2357, 1992 WL 300769*, 1992 U.S. Dist. LEXIS 15282 *4 (E.D.La. October 5, 1992); *Waters v. Farmers Texas County Mut. Ins. Co.,* 797 F.Supp. 575 (S.D.Tex. 1992).

However, defendant Hartford Insurance contends that its subrogation rights arise from its contractual relationship with defendant Geier and not from Wisconsin common law. Defendant seems to imply that this dependency on contractual law somehow strengthens its claim of priority. Furthermore, defendant Hartford Insurance suggests that under the terms of the Reimbursement Agreement that obligate defendant Gei-

er to pay the United States such amount as federal law requires, plaintiff's dispute is solely with defendant Geier. Both arguments are without merit.

First, whether defendant Hartford Insurance Company's subrogation rights arise under Wisconsin common law or under contract is irrelevant to the disputed issue. Federal law preempts subrogation rights arising from either source. *St. Agnes Hospital,* 616 F.Supp. at 428 (in interpreting § 1395y(b), federal law preempts both state law and state common law rules); *Varacalli v. State Farm Mut. Auto. Ins. Co.,* 763 F.Supp. 205, 209 (E.D.Mich.1990) (§ 1395y(b) preempts state no-fault insurance law because state statute conflicted with federal law); *Smith v. Travelers Indem. Co.,* 763 F.Supp. 554 (M.D.Fla.1989) (§ 1395y(b) preempts Florida's collateral source rule which conflicted with congressional intent to make Medicare the secondary payor).

Preemption occurs when Congress enacts a federal statute and expresses a clear intent to preempt state law or when there is an outright conflict between federal and state law. *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). In this case, Congress intended that the Medicare program be reimbursed whenever a private insurer is obligated to pay medical costs. A conflict with federal law arises if a contract enforceable under state statutory or common law protects the subrogation rights of defendant Hartford Insurance to the detriment of a federal claim of reimbursement. Under the preemption theory, the conflict is resolved in favor of the United States, and priority must be given to plaintiff to recover its expenditures.

Defendant Hartford Insurance fares no better with its second argument that the United States' claim is against defendant Geier. Nowhere in the agreement does it state that the enforcement of this contract precludes suit against any other entity to recover Medicare payments.

Both the legislative history of § 1395y(b) and the relevant case law establish the priority of the United States' reimbursement

**1338**

claim under the Medicare program for conditional payments. Consequently, I will grant plaintiff's motion for summary judgment.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for plaintiff and close the case.