Ira KLINEFELTER, Plaintiff,

v.

Roger E. FAULTERSAK and Hummer Turfgrass Systems, Inc., Defendants,

v.

Paul F. Little, Third–Party Defendant.

Civil Action No. 98–909.

United States District Court, E.D. Pennsylvania.

Dec. 8, 1998.

John D. Briggs, Katherman Martz & Gailey, York, PA, for Ira Klinefelter.

Theodore P. Winicov, Philadelphia, PA, for Roger E. Faultersak and Hummer Turfgrass Systems, Inc.

Lorraine J. Zwolak, Comeau and Casey, Conshohocken, PA, for Paul F. Little.

### MEMORANDUM

GAWTHROP, District Judge.

On May 3, 1997, plaintiff, a passenger in a motor vehicle driven by additional defendant Paul F. Little, was injured in a collision with another vehicle driven by defendant Roger E. Faultersak, an employee of defendant Hummer Turfgrass Systems, Inc. (collectively "defendants"). Plaintiff alleges that defendants' negligence caused the accident. Plaintiff suffered serious injuries, and was treated at numerous medical institutions, by various medical personnel.

Now before the court is defendants' Motion in Limine. Defendants move, under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701, *et seq.*, to exclude from trial evidence of plaintiff's medical bills that were either paid or payable by other insurance. Section 1722 of the MVFRL provides:

> In any action for damages against a tortfeasor . . . arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter . . . or any program, group contract or other arrangement for payment of benefits as defined in Section 1719 . . . shall be precluded from recovering the amount of benefits paid or payable under this subchapter . . . or any program, group contract or other arrangement for payment benefits as defined in Section 1719.

Defendants allege that § 1722 precludes plaintiff from recovering any medical payments that were either paid or payable by (1) St. Paul Insurance Company, the company by which the motor vehicle was insured, (2) CNA Insurance Company, issuer of plaintiff's auto policy, and (3) Medicare of Pennsylvania and/or North Carolina, issuer of plaintiff's private health insurance.

To the extent that plaintiff's bills were not paid or payable by insurance, defendants further contend that plaintiff is limited to the

amount of the bills allowable under 75 Pa. C.S. § 1797(a), which states:

> [a] person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability ... benefits or first party medical benefits, ... for a motor vehicle described in Subchapter B ... shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge ... under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

Plaintiff responds that, other than medical bills paid by plaintiff's first party motor vehicle insurance carrier, he is not limited by § 1722 because "the Federal liens at issue preempt the provisions of Pennsylvania Motor Vehicle Financial Responsibility Law." Pl.'s Br. at 2. Specifically, plaintiff contends that § 1722 is preempted by the provisions of the ERISA and Medicare statutes.

■ Section 1722 "precludes a person from recovering damages arising out of the use of a motor vehicle from a culpable tortfeasor if the claimant is otherwise eligible to receive those benefits from any program, group contract, or other arrangement." *Travitz v. Northeast Department ILGWU Health and Welfare Fund,* 13 F.3d 704, 707 (3d Cir.1994). ERISA's statutory provisions, however, preempt § 1722. *Id.* at 710 ("Section 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law or any state statute that attempts to shift the liability for medical and health care benefits to a plan, group contract or other arrangement operating within the meaning of ERISA is preempted by it.").[1] Accordingly, plaintiff is not precluded from presenting evidence at trial in an attempt to recover the costs of medical bills paid or payable by this ERISA plan.[2]

■ The Medicare statute requires Medicare to be a secondary payer and provides that "[p]ayment ... may not be made ... to the extent that—... payment has been made or can reasonably be expected to be made promptly ... under an automobile or liability insurance policy or plan (including a self-insured plan)." 42 U.S.C. § 1395y(b)(2)(A)(ii). Further, any payments made are subject to reimbursement. 42 U.S.C. § 1395y(b)(2)(B). The aim is clearly to make Medicare benefits secondary to automobile or liability insurance. *See* 42 C.F.R. § 411.32(a) ("Medicare benefits are secondary to benefits payable by a third party payer even if the State law or the third party payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries."). To achieve this goal, the statute preserves Medicare's right to reimbursement when and if medical benefits are paid by a private insurer. Medicare thus also preempts § 1722. *See U.S. v. Rhode Island Insurers' Insolvency Fund,* 80 F.3d 616, 618 (1st Cir.1996) ("holding that § 1395y preempts non duplication of recovery provision of state insolvent insurer fund."); *Smith v. Travelers Indem. Co.,* 763 F.Supp. 554, 558

---

1. In *Travitz,* the court engaged in a preemption analysis and noted that "[s]ection 1722, by shifting ultimate liability for medical and health care benefits to the ERISA Fund, has a direct and possibly devastating effect on it. That effect implicates the relations between the principal parties the Fund and its beneficiaries-by requiring the Fund to pay [plaintiff's] medical benefits and by making less overall benefits available to the other beneficiaries of the Fund." *Travitz,* 13 F.3d at 710. Although, ERISA's savings clause "reserves the regulation of insurance to the states ... [t]he deemer clause ... proscribe[s] a state from regulating self-insured ERISA plans." *Id.*

2. In support of its opposition to defendants' motion, plaintiff submitted both a copy of Hanover Foods Corporation Employee Health Benefit Plan (the "Plan") and the affidavit of Donald H. Evans, Jr., president of D.H. Evans Associates, Inc. a Third Party Administrator, acting as the Plan Supervisor for the Plan. Mr. Evans's affidavit states that the Plan "is a self-funded plan established and administered pursuant to the requirements of the Welfare Benefit Plan provisions of the Employee Retirement Income Security Act of 1974." Pl.'s Br., Ex. B.

The Plan itself contains a provision relating to the subrogation of rights and reimbursement. Pl.'s Br., Ex. B. at 56. Thus, to the extent that plaintiff can establish that his medical bills were paid or payable by the Plan, yet also subject to reimbursement, he can introduce evidence of them at trial.

(M.D.Fla.1989) (holding that § 1395y preempts state collateral insurance statute).[3] Accordingly, § 1722, to the extent it here purports to allow private automobile and liability insurance to become secondary to Medicare, does not prevent plaintiff from presenting evidence of medical bills that were paid or payable by Medicare.

For the same reasons, medical bills paid or payable by the ERISA plan or Medicare are not limited by § 1797. However, those bills that were not paid or payable by the ERISA plan or Medicare, nor paid or payable by any other applicable insurance policy or plan, are limited by § 1797.

An order follows.

### ORDER

AND NOW, this 7th day of December, 1998, Defendants' Motion in Limine to preclude the introduction of plaintiff's medical bills is DENIED to the extent that the medical bills were paid or were payable by any plan governed by ERISA or Medicare.*

---

3. State law is preempted when "it is impossible to comply with both state and federal law ... or [when] the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Citing this standard, the *Smith* court held that "[b]ecause the collateral source rule permits private automobile insurers to become secondary sources of recovery behind Medicare, Florida's collateral source rule obstructs the Congressional purpose behind section 1395y(b)(1)." *Smith*, 763 F.Supp. at 558.